Judgment rendered August 27, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,332-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

CHRISTOPHER LEE COLISTON                     Appellant

* * * * *

Appealed from the
Second Judicial District Court for the
Parish of Claiborne, Louisiana
Trial Court No. 34120

Honorable Walter E. May, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT              Counsel for Appellant
By: Chad M. Ikerd

DANIEL W. NEWELL                          Counsel for Appellee
District Attorney

CARY T. BROWN
PERRIN NELSON SMITH, JR.
Assistant District Attorneys

* * * * *

Before PITMAN, STEPHENS, and ELLENDER, JJ.

**ELLENDER, J.**

Christopher Coliston appeals his conviction on seven counts of sexual offenses inflicted on his girlfriend's minor daughters. Contesting no procedural rulings or the aggregate sentences of 48 years at hard labor, he challenges only the sufficiency of the evidence to convict on all counts, specifically the credibility of the witnesses against him. For the reasons expressed, we affirm.

## FACTUAL BACKGROUND

The victims' mother, Tonika Burns, testified she had known Coliston a long time. She also knew that, in 1999, he pled guilty to forcible rape of a six-year-old girl and received a 25-year hard-labor sentence. However, after his release from prison on good behavior in early 2018, she inexplicably started dating him again. By this time, Tonika had four children, including three girls: RB (born 1/3/03), TB (born 5/29/07), and FB (born 5/20/11).

According to Tonika, and confirmed by Dep. Perry, a detective with the Claiborne Parish Sheriff's Office ("CPSO"), the family led an itinerant life, staying in seven different houses, apartments, or trailers over the next three years. Coliston either lived with them or was a frequent overnight visitor in these temporary homes, including a rent house on Isaac Creek Road, in the St. John community; a rent house on Jessie T. Jones Street, in Homer; and a trailer on Hwy. 2, east of Homer.

The house on Jessie T. Jones Street caught fire and burned down in early 2019; Tonika was charged with, and pled guilty to, arson and insurance fraud, receiving a probated five-year sentence. Tonika, Coliston, and the children eventually moved to the trailer on Hwy. 2, but Tonika quit making

her restitution payments for the arson conviction; her probation was revoked. She also testified that Coliston had given her $700 toward the restitution but, after she was sent to jail, he quit supporting her. After Tonika went to jail, the girls were initially taken in by Coliston's parents, the Cosbys, in Minden, but, in early March 2022, the girls' aunt, Bertha Emerson, obtained a custody order and brought the girls to stay with her in Homer.

Once Ms. Emerson took in the girls, she noticed TB was "sad." On questioning, TB confided that Coliston had raped her. On hearing this, Ms. Emerson called Homer Police. The report was relayed to CPSO, and Dep. Perry made initial contact at Ms. Emerson's house on March 10, 2022. Through his interviews, he learned that Coliston had performed acts on all three girls, when they were 16 years old or younger. Dep. Perry sent the girls for interviews at Gingerbread House, in Shreveport, and to the CARA Center, where they were examined by a pediatrician, Dr. Rodriguez.

As a result of these investigations, the state indicted Coliston on seven charges against the three girls:

Count 1: Second degree rape of TB
Count 2: Sexual battery of TB
Count 3: Attempted sexual battery of TB
Count 4: Sexual battery of FB
Count 5: Indecent behavior with juveniles with RB
Count 6: Indecent behavior with juveniles with RB
Count 7: Indecent behavior with juveniles with RB

**TRIAL TESTIMONY**

The case went to trial over three days in September 2023. Pursuant to a pretrial ruling which has not been contested, the state proved Coliston's 1999 guilty plea to forcible rape, his 25-year sentence, and his release on parole in 2018. Dep. Perry, the CPSO detective, identified documents showing that Coliston was born in 1980, and then he meticulously

reconstructed the sequence of seven places where Tonika, her daughters, and sometimes Coliston lived between 2018 and early 2022.

Ms. Emerson, the girls' aunt, confirmed that she obtained a custody order for the two younger girls and took physical custody of them on March 1, 2022; shortly after this, they opened up to her about Coliston's sexual misconduct with them.

RB testified that, when they were living on Jessie T. Jones Street, Coliston started by touching her breasts and vagina outside the clothes, but it progressed to skin-to-skin contact. In one incident, he "touched her," put his fingers down her boxers, and then into her vagina. She recalled being asleep on the couch in the living room, on a Monday night, when Coliston came in and penetrated her with his fingers. On another occasion, she came home from school and was sitting on the couch when Coliston came over and asked her, "You want to see something?" He then exposed himself; she ran out of the house. She did not tell her mother about these incidents, but shortly after, she quit school, ran away from home, and started dating a man named DeJalo.[1] School records from Homer High School showed RB's last day of attendance was January 24, 2019, when she had just turned 16.

TB testified that while they were living in St. John, Coliston would visit and sleep with her mother, but on one occasion he touched TB in the upper thigh and told her, "You're the only one I want to be with." She told her mother about this, but Tonika inexplicably did not believe her, despite being aware of Coliston's prior conviction for raping a young girl. Later, at

_____

[1] DeJalo was not called to testify. However, he shared a Facebook profile with RB and saw that she had messaged with her sister TB. In a conversation from August 2020, TB said she needed to talk about "a guy named Chris" (Coliston); RB asked if he had touched her; TB replied yes, and she wanted to kill herself. This was what prompted CPSO's visit to Hwy. 2 to interview the girls and Tonika.

the trailer on Hwy. 2, when TB was 13-14 years old, Coliston would come over and play "wrestling games" with the girls.[2]  Later, still at the trailer on Hwy. 2, Coliston told TB, "I want you to have my baby."  He took his finger and touched her private parts, under her clothes; she told nobody about this. Still later, TB was in her bed, wearing her pajamas, when Coliston came in, got in the bed with her, and touched her on her privates.  He first used his fingers, and then inserted his penis, and ejaculated in her; it was her first time having sex.  Tonika walked in on this, but again she did not want to believe what was happening.  TB described yet another incident, after Tonika was in jail, and she (TB) was staying at Coliston's mother's house, in Minden, when he came in the room, held her down, choked her, and raped her on the couch.  TB confirmed that after Ms. Emerson got custody of them, she told her what had occurred.

FB, the youngest victim, testified that when they lived on Hwy. 2, she and TB shared a bedroom; Coliston would come over and play wrestling games with them.  He touched FB's private parts and she told him to stop; Coliston and Tonika got into an argument about this.[3]

Dr. Rodriguez, the pediatrician, testified that TB reported at Gingerbread House that she had been assaulted by her mother's boyfriend. Dr. Rodriguez found some bleeding in TB's panties, and other injuries consistent with sexual abuse that had occurred before March 1, 2022, but her hymen was still intact.  Still, Dr. Rodriguez felt that something had

---

[2] TB also testified that during these "games," she saw him touching FB's inner thigh; FB told him to stop, and this started a big argument between Coliston and Tonika.

[3] She also testified that she saw Coliston touch RB's bottom.

penetrated past TB's labia.  As for FB, Dr. Rodriguez agreed that all contact was through the clothing.

Tonika testified, admitting that when they lived on Hwy. 2, TB told her that Coliston had touched her privates, and FB told her he had touched her thigh and private area.  In spite of what her daughters told her, she did not believe these accusations at the time.  She also admitted she had caught Coliston in bed with TB and confronted him about it, but he defused the situation by saying it was "just a game."  On cross-examination, Tonika testified she did not believe what the girls were telling her until they had been "examined" (by Dr. Rodriguez).  Further, while she was on probation, Coliston had been paying some of her bills, but after she was sent to jail for the probation violation, he stopped, around November 2021.  She did not think the girls were "upset with him" about this, but they blamed him for her going back to jail.  She also agreed that, in December 2020, because of the Facebook messages, CPSO had investigated Coliston, but in that interview TB and FB both denied he had touched them.

Coliston elected not to testify, but several family members (three brothers, his mother and father) all testified they had seen him with the girls and never saw him engage in any inappropriate conduct with them; they felt the girls loved him and did not seem afraid of him.

Detective Byrd, of CPSO, testified that he investigated Coliston in December 2020 about the Facebook messages disclosing that he had touched TB.  When Det. Byrd came to the trailer on Hwy. 2, both girls denied this happened, but Det. Byrd felt TB showed signs of being "not truthful," and RB claimed the messages were "not real."

5

## ACTION OF THE TRIAL COURT

The jury took 27 minutes to find Coliston guilty as charged on all seven counts. In early 2024, the court sentenced him as follows: Count 1, 20 years at hard labor without benefits; Count 2, 8 years at hard labor without benefits, consecutive to Count 1; Count 3, 4 years at hard labor without benefits, consecutive to Count 1 but concurrent with Count 2; Count 4, 35 years at hard labor without benefits, concurrent with Count 1 but consecutive to Counts 2 and 3; Count 5, 5 years at hard labor, consecutive to Counts 1 and 4, but concurrent with the others; Count 6, 5 years at hard labor, consecutive to Counts 1 and 4, but concurrent with the others; and Count 7, 5 years at hard labor, consecutive to Counts 1 and 4, but concurrent with the others. In written reasons for judgment, the court stated its intent to impose a total sentence of 48 years at hard labor.

After trial, the state filed a habitual offender bill of information charging Coliston as a second-felony offender but withdrew this because it was satisfied with the length of the initial sentence. Coliston filed posttrial motions for acquittal, new trial, and to reconsider sentence, but these were all denied. This appeal followed.

## DEFENSE'S POSITION

Coliston raises one assignment of error: the state failed to prove he was guilty of third degree rape, two counts of sexual battery, attempted battery, and three counts of indecent behavior with juveniles. He concedes the standard of review, under *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), and does not contend the evidence was insufficient as to any element of any of the offenses of conviction.

Instead, the argument is entirely one of credibility: the three sisters made up these allegations against him because he stopped financially supporting their mother, Tonika; as a result, she could no longer pay restitution on her felony conviction, her probation was revoked, and she was sent to jail. He argues that, according to Tonika, the girls blamed him for her plight and raised these allegations shortly afterward. He further argues that Tonika admitted she always disbelieved their earlier reports of his misconduct, because they "lie"; and, she heard them deny making the accusatory Facebook messages when Det. Byrd came to their trailer. In short, the accusers were simply not credible.

Coliston also cites his family members' testimony that they never saw him act inappropriately toward the girls. Further, he argues Dr. Rodriguez only "claimed" to see evidence of prior trauma in TB, but she could not say when it had occurred; she conjectured it was some two months prior to the examination, but this would have been earlier than the events described by TB at trial. He suggests this expert testimony was inconclusive.

In essence, he submits the victims lied about everything, and this negated the factual basis for the convictions. He asks this court to vacate all convictions and sentences and enter a judgment of acquittal.

## DISCUSSION

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, *supra*; *State v. Stockstill*, 19-01235 (La. 10/1/20), 341 So. 3d 502. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not

7

provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder. *State v. Bourgeois*, 20-00883 (La. 5/13/21), 320 So. 3d 1047; *State v. Dotie*, 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, *writ denied*, 09-0310 (La. 11/6/09), 21 So. 3d 297.

The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness, in whole or in part. *State v. Brown*, 18-01999 (La. 9/30/21), 330 So. 3d 199; *State v. Combs*, 56,232 (La. App. 2 Cir. 4/9/25), 410 So. 3d 405. The appellate court does not assess credibility or reweigh evidence. *State v. Kelly*, 15-0484 (La. 6/29/16), 195 So. 3d 449; *State v. Combs*, *supra*. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Reed*, 14-1980 (La. 9/7/16), 200 So. 3d 291; *State v. Coffey*, 54,729 (La. App. 2 Cir. 9/21/22), 349 So. 3d 647, *writ denied*, 22-01574 (La. 12/20/22), 352 So. 3d 89. This includes the sole testimony of a sexual assault victim. *State v. Coffey*, *supra*; *State v. Small*, 55,208 (La. App. 2 Cir. 8/9/23), 369 So. 3d 501.

The defense tried to develop, on cross-examination of Tonika, a motivation for the girls to fabricate accusations against Coliston. Notably, Tonika testified that she went to jail in September 2021 and, after that, "probably November or maybe October or something like that," Coliston stopped paying her bills. Nonetheless, she admitted her girls probably "held it against" him that he did not help her pay the restitution in the first place. In short, the potential for bias on the victims' part was exposed at trial but the jury did not find it strong enough to undermine their credibility. As for the credibility of Tonika, there were various reasons to disbelieve her; she

had a felony conviction for arson and insurance fraud, she made the inexplicable decision to allow Coliston, a convicted rapist, to spend time with her minor daughters; and she blindly accepted his denials of misconduct, in spite of what the girls told her and what she saw with her own eyes. Still, she was now convinced the girls were telling the truth. On this testimony, the jury was entitled to find the victims lacked bias or animus to fabricate false accusations against Coliston.

This court also notes that the victims' descriptions of his conduct were direct and unwavering, and consistent with earlier statements to Tonika and later statements to Ms. Emerson and Dr. Rodriguez. Finally, Dr. Rodriguez's exam of TB was consistent with the history she provided; owing to the time since the events occurred, a more precise evaluation was not possible. On this evidence, we find no basis to disturb the jury's decision to accept the victims' testimony.

As noted, beyond the general attack on the victims' credibility Coliston has not asserted the state failed to prove any essential element of the charged offenses. However, for the sake of completeness, we have reviewed the entire record and find the evidence sufficient to prove each offense under *Jackson v. Virginia*, *supra*. Briefly, as to Count 1, second degree rape of TB, the victim provided a stark account of Coliston coming into the bedroom in the trailer on Hwy. 2, pulling down her clothes, forcing her onto the bed, and fingering her privates before finally inserting his penis and ejaculating into her and onto the bed. This satisfies the essential elements of oral or vaginal sexual intercourse deemed to be without lawful consent because the victim was prevented from resisting by the use of force or threats of violence. La. R.S. 14:42.1 (A)(1); *State v. McFarlin*, 54,754

9

(La. App. 2 Cir. 1/25/23), 354 So. 3d 888, *writ denied*, 23-00261 (La. 10/17/23), 371 So. 3d 1078. Count 2, sexual battery of TB, she described an incident in St. John when Coliston came into the room, told her she was the only one he wanted to be with, and felt her upper thigh; TB would have been 11 or 12 at the time. This satisfies the essential elements of intentionally touching the genitals or anus of the victim by the offender, directly or through clothing, when the offender acts without the consent of the victim or when the victim is not yet 15 years old and at least three years younger than the offender. La. R.S. 14:43.1 (A)(1); *State v. Naulty*, 24-0118 (La. App. 1 Cir. 2/27/25), 406 So. 3d 1231, *writ denied*, 25-00374 (La. 5/20/25), 409 So. 3d 220. Count 3, attempted sexual battery of TB, she described an incident on Hwy. 2 when Coliston came into the room, got in the bed with her, pulled down her clothes, and choked her, but she was able to push him away. This obviously meets the criteria for an attempt, La. R.S. 14:27 (A), to commit sexual battery.

As for Count 4, sexual battery of FB, the victim testified that during a "wrestling game," Coliston touched her private parts; she would have been 9 or 10 at the time, and Coliston was about 40. This satisfies the essential elements of intentionally touching the anus or genitals of the victim, directly or through clothing, without the consent of the victim, and when the victim is not yet 15 years old and at least three years younger than the offender. La. R.S. 14:43.1 (A)(1); *State v. Naulty*, *supra*.

Counts 5 through 7 were for indecent behavior with juveniles with RB. The victim described an incident on Jessie T. Jones Street, on a Monday night, when she was on the couch and Coliston came over to her, touched her breasts, pushed her down, and penetrated her with his fingers;

10

she said this was not the only time something like this happened. She also described an occasion when she came home from school, Coliston was alone in the house, and exposed himself to her. These all occurred before she left school, in January 2019, at the age of 16. This evidence satisfies the essential elements of a lewd or lascivious act, performed by the defendant on the person or in the presence of the victim, when the victim was under the age of 17 and at least two years younger than the offender, the offender was at least 17 years old, and there was specific intent to arouse or gratify his own or the victim's sexual desires. La. R.S. 14:81 (A); *State v. Masters*, 55,705 (La. App. 2 Cir. 7/17/24), 399 So. 3d 564, *writ denied*, 24-01065 (La. 12/11/24), 396 So. 3d 963. The evidence was, for all counts, sufficient under *Jackson v. Virginia, supra*.

The assignment of error lacks merit.

**CONCLUSION**

For the reasons expressed, the convictions and sentences are affirmed.

**CONVICTIONS AND SENTENCES AFFIRMED**.